I have 15 minutes of opening. I think you've reserved five minutes for rebuttal. We'll hear from you, sir. Thank you very much, your honor. Good morning, and may it please the court, Raffi Malconian, for the appellants in this matter, Harry Colbert and Carla Taylor. Before I begin, let me express my sorrow and how moved I was by the news of Judge Wheatley's death. I express my condolences to the court. Thank you. When a bank takes steps, it is honest and straightforward in its dealings with its borrowers. To dot its I's and cross its T's, Wells Fargo in this case was not. To the contrary, Wells Fargo issued a flurry of misstatements in this case to my clients, Harry Colbert and Carla Taylor. Those misstatements caused them damage under the Texas Debt Collection Practices Act and under Texas common law principles. The judgment below should be reversed and the case remanded for further discovery, summary judgment, and then trial. There are three sort of buckets of misstatements and misrepresentations in this case, and I plan to go through them in this order, the notice of default, the notice of acceleration, and the excess funds claim. Of course, I'll go in whatever order the court would like, but that's my initial plan. So let me start with the notice of default. Everyone agrees in this case that Wells Fargo sent my clients a notice of default in May 2018, and everyone also agrees that Wells Fargo sent a series of balanced statements after the notice of default that on their face contradict the notice of default. They say, and you can see one of them at ROA 727, but there's I think three of them in the record, that the first filing in the foreclosure process has not yet been made. Okay, let me, I hate to interrupt you from going through the one, two, three buckets, and you can go through them, but assuming, taking your argument that the three buckets are, you know, misstatements, and I don't claim to be an expert in this Texas foreclosure procedure at all, but cumulatively or individually, I mean, sort of what's the silver bullet? I mean, there's no disputing them owing the debt, there's no disputing that. So, I mean, is your overarching argument cumulatively these mistakes, you know, assuming they are, somehow obviate under Texas law the ability to foreclose? I mean, without getting into it, but I mean, is it, it's cutting through, is it that the cumulative effect, in other words, that if a lender makes enough mistakes, and if they're substantive, that under Texas law obviates, otherwise, the foreclosure procedure? Is that what you're saying? Because you said at the opening, okay, if we reverse it, it should go back for more discovery. So, discovery of what? More mistakes? You follow my question? I do, your honor. Let me try to answer that in a couple of ways. So, first, with respect to the Debt Collection Act, that's a have to prove that there was some ultimate consequence to our client. It's a misrepresentation claim. And so, what we're saying is, we can point out at least two misrepresentations with respect to the notice of default and the notice of acceleration issues. And those are causes of action under the Debt Collection Practices Act. Now, Wells Fargo may have defenses to all that. For example, there's a good faith mistake defense in the Debt Collection Practices Act. They can argue all kinds of things. For example, they could say, on summary judgment, we didn't get any damages from those mistakes. That's all fine. But in terms of pleading a 12B6 case, we've certainly reached that, in terms of the Debt Collection Practices Act arguments. Because those are just misrepresentation arguments. Now, moving on to whether the foreclosures should have gone forward or not. That's a slightly different argument. That's our breach of contract argument. And there, what we're saying is that even though Wells Fargo sent a notice of acceleration on January 11th, 2019, the subsequent balance statement that they sent was an abandonment of that acceleration. Because it both says that the loan may be accelerated in the future. That's on the third page of the document, 752 of the record. And it asks for less than the fully accelerated amount. And that is what this court held in Boren, in a slightly different context. Okay. All of that, to what consequence? With respect to the breach of contract claim, they shouldn't have been able to foreclose. That's the consequence. Okay. And what is the consequence of that? The consequence of that is that we... Sorry, Your Honor. No, what is the consequence of that for your client? We get damages under breach of contract for the equity that we lost, among other things. What? I mean... The equity in the house that we lost because of the foreclosure. We get damages for that under breach of contract. And what are those damages for the foreclosure? That's what we're saying the damages are. You want the house back? What do you want? No, Your Honor. We want the difference between the market value of the house, which was $250,000, and the amount for which they sold the house in the foreclosure, which is $155,000. That's the breach of contract claim. With respect to the Debt Collection Practices Act claim, we have different quantums of damages there as well. But it includes that delta in the difference in the prices. So that is overarchingly what we're looking for. There's also a negligent misrepresentation claim in there. That arises out of the same causes of action, or the same misrepresentations that we claim under the Debt Collection Practices Act. Let me address the two arguments my friends on the other side make about that, if I can. First, they say that the negligent misrepresentation claim fails, and I think this is what the district court held, because it's not a business tort. Excuse me, mortgages don't fall into the language of the negligent misrepresentation tort, because the information was not provided to our client in the pursuit of their business. But there is no Texas case that says anything like that. I have not been able to find one. I don't think our friends on the other side have cited one. And in fact, many Texas, both Texas Debt Collection Act claims, and negligent misrepresentation claims in the same case. If you want to see one like that, Shellnut is an excellent example, Shellnut versus Wells Fargo, it's in my brief. And it's a case where the court revived a negligent misrepresentation claim, and a Texas Debt Collection action in a summary judgment proceeding. So I think this argument that somehow negligent misrepresentation applies only to, I don't know exactly, but commercial transactions other than mortgages doesn't make a lot of sense under Texas law. The other argument my friends make is that the negligent misrepresentation claim is invalid under the economic law school. And I think that too is incorrect. The Texas economic law school does not say that you can never have both a breach of contract action and a tort like negligent misrepresentation. What it says is you have to plead different damages and a different duty with respect to the breach of contract and the tort that you're seeking to break. That's exactly what it says in Shellnut versus Wells Fargo. And there's other cases cited in my brief. And of course, those are what this court has to follow in an eerie case unless the Texas Supreme Court says otherwise, which it hasn't here. And what Shellnut says is if you plead damages that are different than your breach of contract damages, you can pursue both claims. And that's exactly what we've done here. For our negligent misrepresentation claim, we have, in addition to mental anguish, three specific money damages claims. Our credit report was hurt. We had moving expenses, out-of-pocket moving expenses. And we had to pay a lawyer to try to get a TRO to stay in the house. Let me ask you this, just again, I don't know Texas procedure, but assuming those causes of action that you've mentioned are viable, you said they may have defenses. OK, we're at the 12B6 stage on this foreclosure. So why wouldn't those cause of action you've said sort of operate on a parallel track or separate track? In other words, the foreclosure is the foreclosure, and it's moving along on a track without regard to whether you have these other cause of action in state court and the viability of those other claims you have fit into the normal foreclosure proceeding, which is usually sort of executory, or at least in Louisiana, it's kind of executory. I mean, you owe the money. They put it in default. It's not paid. It just kind of moves along. So is there something unique in Texas law where the foreclosure process itself isn't moving along on its track, and if you don't do it over here, you somehow lose the ability to move these other ones? Do you understand what I'm saying? I think I do, Your Honor. The foreclosure here is long completed. Wells Fargo foreclosed on my client's house. They sold it for much less than it was worth. We have an allegation in here that they also took part of the proceeds that they weren't supposed to take, which is a violation under the Texas Debt Collection Act. That's 393. So your argument to this is this is on 12B6, right? Yes, Your Honor. So your argument to us is that all of this is inappropriate for 12B6. Is that, I mean, not your sole argument, but when we strip through it, is that what you're getting to? You won't further process along the way to develop these other arguments, et cetera, et cetera. You're saying getting poured out on a 12B6 doesn't fit the definition of an inability to state a claim upon which relief can be granted. Is that the bottom line? Yes, Your Honor. That's the bottom line. We've certainly pleaded a claim under all these causes of action. Whether Wells Fargo will prevail eventually at trial or summary judgment, we don't know. We haven't gotten through all the discovery. But in terms of a 12B6 motion to opinion here, it's a couple of pages long, and it doesn't go through the kind of analysis that Wells Fargo does in its brief or that we do in our brief. It's a very conclusory document, and it's not right. It just isn't right as a matter of 12B6 analysis. At a minimum, we have our claims under the Texas Debt Collection Practices Act under three provisions of that act, the misrepresentation provisions and the excess funds provision. And we have a claim under negligent misrepresentation and breach of contract at a minimum, though we would urge you to also reverse the fraud, allegation, dismissal, and the just pure negligence dismissal. Mr. Mulconey, can I ask a question about the TDCPA claims, the misrepresentation ones? I know you don't have to plead an intent to defraud on Wells Fargo's part, but do you need to plead something about your client's understanding of their debt? That is, that somehow the misrepresentations in the January 16th, 2019 statement, and perhaps there are others like that one, somehow led your clients to believe that their debt was less than the accelerated amount or less than some other amount owed? I don't think so, Your Honor, but I think it that question shakes out in damages. So maybe Wells Fargo will say in the next part of the case, look, you couldn't possibly have believed any of that and therefore, you know, you don't get any damages for the supposed default. So that's one way you could shake out in my view. Another way is, well, this is different, but it's, you know, the bona fide mistake defense that Wells Fargo might be able to raise. So I don't, it's not a strict liability statute in that sense, you know, but in terms of our pleading, we don't have to plead that, you know, justifiable reliance that like we would have to plead in a fraud claim or something like that. It's just a misrepresentation claim. And this court said that if you want to see a case where that comes up, the McCaig case, which I think is the governing case in the circuit under the rule of orderliness, it says that even a facially innocuous misstatement with respect to a balance statement or any other kind of document that you send to a borrower can trigger liability under. That sure sounds like strict liability to me. I mean, if, if I just send a statement that says you owe me a hundred dollars and a penny, when you in fact owe me a hundred and it requires no misunderstanding on your part, no intent on my part and no reliance whatsoever on either of our parts, it's just a typographical error. Is that actionable under A8 and A19? I think it's actionable if it falls into the character status and extent language in A8. I'm not sure a typographical error with respect to the amount necessarily would, but as I say, I think Wells Fargo would win that case. They would just say, you know, we made a good faith mistake and our systems normally catch that and there's no problem. So this really doesn't cause or an entity like Wells Fargo, a lot of difficulty. It really only comes up where there's a pretty significant misrepresentation. And here I do want to be clear. If you look at these depositions that are pleaded in our complaint, Wells Fargo has no explanation whatsoever for why these mistakes were made. They just say, you know, they're contradictory. Having said that, your honor, I'll talk to you again on rebuttal, but I would urge you to reverse. All right. Thank you, sir. Appreciate the argument. All right. So let's hear from Wells Fargo. Mr. Luce, you're up. My name is Tom Luce. I represent the attorney Wells Fargo. I want to make sure the court can hear me okay. Yeah, you're good. Okay. I appreciate it. The first issue that I'd like to discuss today is the abandonment of acceleration issue that is the basis for a number of the claims that the Colbert is alleged. As this court knows, abandonment of acceleration is framed in terms of waiver. A waiver can be expressed or it can be implied by conduct. Contrary to the Colbert's argument in this case, the alleged abandonment of acceleration is by implication not expressed. The Colbert's rely exclusively on the January 16th monthly statement to argue that there was an abandonment of acceleration, but that statement makes no reference to the January 11th notice of acceleration. It doesn't mention it. It doesn't expressly say we're rescinding our acceleration or anything else. The Colbert's alleged that the January 16th statement says, quote, expressly stated that the loan had not been accelerated, but that statement is unsupported by the record. The letter doesn't say that. In their reply brief, the Colbert's argued for their, quote, interpretation of the January 16th letter. If it were an express rescission of the acceleration, interpretation of the letter wouldn't be necessary. It would say we rescind or something to that effect. Instead, it is the interpretation of language in that statement, and that's what makes this an abandonment by implication. Can you help me with one sentence that is on page three of the statement you were just referencing? It says failure to bring your loan current may result in the acceleration of your repayment terms. So that sure sounds like it hasn't been accelerated. I realize the January 11th letter says it's accelerated. So that's my sort of first sentence. I have no idea why that would be in there. I'm curious as to why Wells Fargo would put it there. But the one that I find even weirder is I'm looking on the first page of the statement, and it says explanation of amount due, $8,209.44 as the overdue payment and an unpaid balance, less than applied funds, and then I apologize, I can't read it, but it's like $8,288 maybe. That's not the accelerated amount. So it specifically says that the explanation of the amount due is not the accelerated amount, which makes it sound like it's not accelerated. When I hear the word accelerated, I think that means the total amount of the loan due, not a fraction of it. Well, the January 16th statement says a number of different things. It provides both the accelerated amount of the debt as of the date of this statement. That's listed as $152,000 and change. It also provides a reinstatement quote, which as you pointed out is $8,000 and change. It's hard to read the text is small, but it's in that range. And so it provides information about what the accelerated amount is and what a reinstatement amount is. As far as the reinstatement amount goes, it's important, I think, for the court to keep in mind that the deed of trust in this case gave the Colberts the right to reinstate their loan after the loan had been accelerated and even after foreclosure proceedings had been instituted. So merely providing them a reinstatement quote is not an abandonment of acceleration. It's a recognition of their rights under the deed of trust. The provisions of a reinstatement quote and the provision of a routine monthly mortgage statement did not waive or abandon acceleration. And so I think just providing that information to the Colberts did not abandon the acceleration. You started your question, Your Honor, asking about the language on page three that failure to bring a loan current may result in acceleration of the repayment terms. What I'd like to direct the court's attention to, and I'll come back to that specific language, but at the very top of the first page of the January 16th monthly statement, it says in all bold and underlined, your loan has been referred to foreclosure. It says a matured loan requires all balances to be paid in full. And it says this does not change a sale date that may be scheduled. The timing of this I think is important also. On January 11th is when the lender sent a notice of acceleration and a notice of the foreclosure sale. The foreclosure sale was scheduled for February 5th. So this letter comes five days after the notice of acceleration, and it says we're not going to change a sale date that may be scheduled. So that language at the top of page one clearly indicates that Wells Fargo did not intend to take down the sale that had been scheduled. It provides that the full accelerated amount of the debt is $152,000, and that also indicates that the loan remained accelerated. In light of the language that you see on page one of this January 16th statement, the language on page three does not unequivocally evidence an intent to abandon the schedule, the acceleration that had been noticed only five days before. I think it's also important to note that that information, that statement at the top of page three, is information that's required to be provided to borrowers under RESPA regulations, and we cite this in our brief. One of the things that RESPA says you need to tell a borrower is a notification of possible risks, such as foreclosures and expenses, if a delinquency is not cured. I think that's what that language is intending to if you don't bring your loan current. And I think it's also important to note, Your Honor, that it says that if you don't bring a loan current, it may be accelerated. It's not like the language in Warren that says it would be accelerated or will be accelerated, which is the language from the notice of default in this case. Well, I'm not sure how much the may gets gets you, because obviously the statement that you were just talking about on the first page also says may. Any scheduled sale may be affected. It doesn't say that it won't be affected. And so this sort of conditional may language seems to run throughout the letter. And the thing that's just confusing to me, if I was the account holder and I get this in the mail, is it says it may result in acceleration. Then there's a table of the past payments. Oddly, I'm not sure why that's there. But then the next bolded sentence is Wells Fargo has made the first notice or filing required by applicable law for the foreclosure process. Right. So like I can't figure out if I'm the account holder, one of them says foreclosure has started. The other one says we may accelerate. And so I guess I'm just confused as to why Wells Fargo would have the sentence in there. I was thinking maybe there was some provision of state law. I guess you're saying the RESPA regulations require it. I think that a lot of the language in this monthly statement is driven by the RESPA regs. And I think your question, though, brings up another point that I haven't gotten to yet, but that I think is very important here, is that whereas here the waiver or the abandonment of acceleration is by implication, it must be based on conclusive evidence that shows that a party unequivocally manifests intent to waive. And that comes both from this court's decision in Thompson v. Bank of America, Verdon, even the Boren court talks in terms of unequivocally manifesting that intent. The Colberts in their brief called this January 16th statement, the quote, equivocal balance statement. And I think that that concession almost could bring the discussion of whether that January 16th statement abandoned acceleration to a close. If it is equivocal, it does not abandon acceleration because to abandon acceleration by conduct requires an unequivocal manifestation of intent to waive the acceleration. And so whereas here it was sent only five days after the loan was accelerated, it was sent, there was a foreclosure sale scheduled only a few weeks into the future. And it says that it states the accelerated amount as of the date of the statement. I don't think that there is a fair reading of this that says it unequivocally abandoned the acceleration. The statement at best is equivocal. Sorry. I know that the deed of trust has this provision in it that says you must, even after acceleration, provide a restatement amount to the borrower. Is that required by state or federal law, I suppose? Or is that just a business practice of two parties at arm's length negotiating an agreement? The deed of trust in paragraph 10 gives the borrowers a right to reinstate after acceleration and even after foreclosure proceedings have been instituted. I don't know the answer to your question whether there is a state law requirement that says you reinstate after acceleration or after foreclosure proceedings have been instituted. I don't believe there is a state law on that, but I'm not certain of that. And I think there may also be a federal regulation that gives a right to reinstate even after foreclosure proceedings have been instituted, but I'm not certain of that, Your Honor. Let me ask you a process question. Let me just is the district court dismissed on 12b-6? Okay, we all know what 12b-6 is and what generally is presented. So, reeling back a bit, the foreclosure has occurred and is by the boards, right? Yes, Your Honor. The foreclosure occurred in February 2019. All right. So, it appears this is not about principle, but it's about money. So, they allege that, number one, the property was sold for more than, you know, what they owed. Therefore, they didn't get their equity, et cetera. Then they have the other claims, you know, for damages, et cetera, et cetera. So, my question to you is the case on appeal to us is on a 12b-6. The district court's reasons or where they are. And so, often we get to 12b-6, the other side says, well, they didn't ask to amend their pleadings and blah, blah, blah. I didn't like that. Well, I don't see that. So, my question is, even taking everything you say to be true, you know, why is 12b-6 appropriate here? Said differently, the district court dismissed the claims under the TDCPA saying that they didn't make certain factual allegations, dah, dah, dah, dah, dah. And I heard you sort of point to that. We're all deep into the statute and this other stuff. But what's on appeal to us is a 12b-6. So, counsel opposite says we should reverse because all of this shouldn't have been considered on 12b-6, gotten more evidence he wants to discover, et cetera. So, just for a moment, help me understand why 12b-6 was appropriate, not whether what you're saying is true and all of that. But it's a 12b-6. Just go back. So, all this can be untangled and so forth, either in summary judgment or something else. Or are we in our quintessential 12b-6? You're stating they failed to allege certain critical facts to keep them in the court longer. Do you understand my long question? I'm not certain that I understand it entirely, but let me take a shot at answering it. I'll ask it more simply, which my children say I can't do. On appeal to us is a 12b-6. And their appeal to us is the district court erred in granting a 12b-6 dismissal. Okay, we know the 12b-6 is typically on the pleadings, et cetera. Now, we've gone deep in the argument in briefs about the TDCPA and all these other claims. I'm just asking you straight up, what is the viability of the 12b-6 dismissal, not the answers to all these other questions. How do you defend the 12b-6 as appropriate? Well, the district court properly dismissed the Colbert's claims under Rule 12b-6. And let me break it down into, I guess, to use Mr. Milconian's term, buckets. Many of their claims are premised on the argument that Wells Fargo abandoned acceleration by its January 16th monthly statement. And we take, as a matter of law, that January 16th monthly statement is not unequivocal. It is, as the Colbert's call it in their brief, an equivocal statement. If it is not unequivocal, then it does not abandon acceleration by implication. And so all of the claims that the Colbert's alleged that are based on the argument that Wells Fargo abandoned acceleration fail as a matter of law. Let me go to a specific instance where one of their, let me take one of their TDCA claims, their claim under Section 304-88. 304-88 requires a misrepresentation of the character, extent, or amount of a consumer debt or misrepresenting the consumer debt status in a judicial or governmental proceeding. In their reply brief, the Colbert's emphasized that Wells Fargo misrepresented the status of foreclosure process or that the debt had not been accelerated was a misrepresentation of the status of their debt. That's their argument, as I understand it. But a misrepresentation concerning a consumer debt status is only a viable claim if it's a misrepresentation of the debt status in a judicial or governmental proceeding. And there was no judicial or governmental proceeding in any relevant time in this case. Consequently, their argument that misrepresented the status of our debt is simply not a viable claim under Section 88. Stated in our brief, we don't think misrepresentations about the foreclosure process are actionable either. The foreclosure process is something that is not defined in state law. There is no settled meaning of what is the foreclosure process. As a consequence, it's what Wells Fargo considers it to be. That's not something that is objectively true or false. You couldn't say this is or is not in the foreclosure process unless you knew what the lender thought the foreclosure process was. And a lender could take a different position about what the foreclosure process is. But, and I think, Judge Stewart, you started off with this. The Colberts were never misled about where they stood with their debt vis-a-vis Wells Fargo. They were given a notice of a default that said, if you don't cure your default, we're going to accelerate the debt and that's going to result in the sale of your property. The monthly statements about which the Colberts complain all say, here's the amount of the debt, here's the amount of your default, and specify that you're in default. They indicate how long you've been in default. The deed of trust provides, and this is no secret, but a mortgage lender's remedies for a payment default are to accelerate, to ask that the default be cured. If it's not cured, to accelerate the debt and to foreclose on the property. So at no point is there an allegation or do I think it's reasonable to infer that the Colberts were misled about where they stood with this debt. And I think a vague statement about Wells Fargo's internal process about what the foreclosure process was simply is not a viable claim under the TDCA. The other claim that they, that Mr. Melconian mentioned, excuse me, was the, I think he called it the excess funds claim. And we think dismissal of that claim was appropriate under 12B6 because their allegations are simply conclusory. They attach documents to their complaint that show their allegation that the amount owed was a certain amount. It is not the correct amount. It wasn't, they claim, it wasn't my argument that I could close the gap by showing that more was owed than what they alleged. My point was that the allegations are conclusory and refuted by the documents that they attach to their complaint. And so it's insufficient facts, I think, to support that claim when there are discrepancies in the amount that's owed and they don't explain what that is. Well, they're your records. How much do you think was owed at the time of the foreclosure sale? The record shows the amount of principal that was owed. It shows the amount of, I think there are escrow amounts. And if you look at the statements, as of the day, as of January 16th, it was $152,000 and change. I don't think though, that in the record in this case, there are reflected other amounts that I think logically would have been owed on this debt as well, such as attorney's fees, which are recoverable under the note that would have been incurred in connection with the foreclosure. I think there are other foreclosure fees that are typically incurred in connection with these cases to conduct the foreclosure. So I don't think the record that we have is complete regarding the total amount owed. But if they say you sold it for $155,000 and we owed you $152,000, the number you just read, that's obviously different and certainly not conclusory. I think it's conclusory because they don't explain the discrepancy between what they allege to be owed and what the documents reflect the different amounts that were owed. And just to sum up, I'm about out of time. This was a straightforward foreclosure case. The Colbert's borrowed money and defaulted. The process was followed to give them notice of default of the foreclosure sale. The foreclosure sale happened and that's what you would expect to happen in a case like this. Thank you, Your Honor. All right. Thank you, sir. We're back to you, Mr. Melconi. You reserve rebuttal. Thank you, Your Honor. I have a few points to make. Let me start with where Mr. Luce just ended with this excess funds claim. As Judge Oldham pointed out, even if you take Wells Fargo's explanation of the situation, there's still a $3,000 gap between what we say we owed and what they took. But the document we pleaded in our complaint backdates, is after the document Wells Fargo relies on. So this is something we're going to have to sort out on summary judgment. We have a document that says the total amount we needed to pay was $144,000. And they took $155,000. And that is certainly a Rule 8A allegation that I have a motion to dismiss. On to the deed of trust question. Wells Fargo says that in the deed of trust, there's a right for the borrower to reinstate. And therefore, when they send a reinstatement amount in a post-acceleration balance statement, they haven't potentially abandoned acceleration. But that's actually not correct. If they wanted that to be the case, they need to have non-waiver language in the deed of trust with respect to that provision, the reinstatement provision. And Wells Fargo doesn't have that kind of language. Why not? Well, it's because most of the time, Wells Fargo is making the opposite argument, that they have abandoned acceleration in order to save their statute of limitations argument, because they have a certain amount of time after the notice of acceleration to foreclose. So if you look at page 15 of my reply brief, there's two cases there that I cite, Ocwen versus Rioma or something like that. And Justice versus, I think it's Wells Fargo. And those are both cases where the banks argued we abandoned acceleration by sending a post-notice of acceleration balance statement that asks for less than the amount. And then the other side said, oh, but there's this reinstatement right in the deed of trust. And these are foreign documents. Everyone uses, I think, close to the same document. And the court said, no, there's no non-waiver language in that reinstatement provision. And that doesn't save you from abandonment of acceleration. All right. Let me ask you this. Yes, sir. Let me ask you this. Quick reading back, Judge Cummings ruling. And I mean, he goes through the seriatim. And in several places, he says plaintiffs have failed to allege facts. Plaintiffs have failed to allege facts. And, you know, he takes all these claims and the fraud claim, he says, a failure to meet rule 9B pleading. And then the tort claims, he says, they fail to allege facts supporting, et cetera. So my question is, given the ruling, I mean, we go down a lot of it. He's saying fail to allege facts or the pleading is conclusory. So did you ask, I mean, notwithstanding your thought that it was OK the way it was, but I mean, did you ask to amend, file an amended pleading that more, you know, that fleshed out more, you know, what the court thought was missing or you just sort of rose and fell on the pleading as is? No, Your Honor. We asked for an amendment to the complaint. We didn't provide a, you know, proposed amendment in that motion, but we're allowed to do that. So we asked for the right to amend. And the judge denied that request. And honestly, the judge didn't even tell us what is missing from the complaint. It seems that the judge simply says, well, these are conclusory. Looking at this complaint, it doesn't seem conclusory to me. And I don't know which parts of it could possibly could be conclusory. But we did ask for amendments. He says his plaintiffs have failed to allege facts to support a violation of Section 392.301, which prohibits the use of threats. And he says more of a plaintiff's failed to identify any alleged threats. So he's saying you didn't allege the threat. So why isn't that communicating to you that he's saying whatever he said about threats is conclusory? Your Honor, we've conceded that cause of action. We are not saying that we have a cause of action under the threats part. We are only alleging claims under A8, which is a misrepresentation about the character, status, and extent or amount and extent of the loan. A19, which is any other misrepresentation in the course of collecting a debt. And A2, which is the excess funds. You know, you took more money than you were supposed to. That's all we're saying. We're not making the threat argument. Okay. Well, I was just trying to get to that the rulings on 1286 where I started and your arguments about, no, we're entitled to discovery and arrest. And the ruling, he goes iteratum about, you know, fail to allege is conclusory, et cetera. Ordinarily when we get these 1286, plaintiff says, well, I, what you did, I tried to amend and they attach with it what the amended pleading might say in order to stay in you know, what's not, not done. I'm trying to get to the meat of the coconut that this is a 1286 appeal and you're asking to stay in court based on a plea. But you've, you've answered my question that you did seek to, to, to file. So, okay. And we think our complaint was enough as it was anyway. Okay. All right. I see my time is up unless the court has further questions. Any questions, additional questions from the panel, Judge Jolly, Judge Oldham? None. All right. I think we're good. All right. Thank you, Mr. Malkonian and Mr. Luce for your briefing and your argument. We'll do our, our best to untangle this. Thank you, your honor. All right. Thank you.